UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY CASTRO,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN E. POTTER, Postmaster General, United States Postal Service,<br><br>    Defendant.<br>_____/ | No. C 06-3320 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendant's Motion for Summary Judgment** |

    Plaintiff Jimmy Castro ("plaintiff"), proceeding *pro se*, filed this action against Postmaster General John E. Potter ("defendant"), alleging unlawful employment discrimination. Defendant now moves for summary judgment. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.    Plaintiff's Employment and Psychological History

    Plaintiff is a former United States Postal Service employee who worked at the Pleasanton Post Office from May 1987 through May 2001. Estrada Dec., Exh. A. Plaintiff was terminated from the Postal Service in 2001, purportedly due to being mentally unfit for duty as a result of a mental disorder. In particular, plaintiff was observed talking and arguing with himself at work, and was the subject of complaints from customers and other Postal Service employees. Estrada Dec., Exh. B; Hearing Transcript at 342:9–346:6, 357:1–9, 362:14–364:10. Plaintiff additionally made

1   unsubstantiated, sexually-themed allegations regarding coworkers beginning in 1998. Id. at
2   329:22–331:21, 332:16–23; Estrada Dec., Exh. C. Plaintiff additionally accused a female coworker
3   of sexually harassing him because she would not go on a date with him. Hearing Transcript at
4   359:8–361:9; Estrada Dec., Exh. B at 3–5. Finally, plaintiff accused his supervisor of attemping to
5   assault him with a file cabinet by slamming a drawer ten feet away from plaintiff. Hearing
6   Transcript at 372:5–373:7.

7   In April and July 1999, Pleasanton Postmaster Felipe Imperial requested a Fitness for Duty
8   (FFD) examination of plaintiff due to plaintiff's behavior. Dr. Stephen Raffle, a psychiatrist,
9   conducted an evaluation of plaintiff on September 8, 1999, and issued his FFD report on September
10  12, 1999. Estrada Dec., Exh. E. Dr. Raffle diagnosed plaintiff with schizoaffective disorder and
11  borderline personality disorder, with delusional (paranoid) disorder and paranoid schizophrenia as
12  possible alternative diagnoses. Id. at 11. Dr. Raffle's report stated that plaintiff was "emotionally
13  unstable because he has recurrent misperceptions of reality," and that plaintiff was unfit for duty. Id.
14  at 12–13. He also strongly recommended psychotherapy to engage plaintiff's cooperation in taking
15  anti-psychotic medications. Id. at 12.

16  Following Dr. Raffle's report, plaintiff was placed on administrative leave in December
17  1999. On January 4, 2000. Imperial informed plaintiff that he could not return to work based on a
18  recent medical assessment funding him totally disabled, but gave plaintiff thirty days to obtain a
19  second opinion. Estrada Dec., Exh. H. By letter dated January 7, 2007, plaintiff requested "light
20  duty assignments within [his] medical restrictions." Estrada Dec., Exh. I. The Pleasanton Post
21  Office, based on Dr. Raffle's determination that plaintiff was totally unfit for duty, did not respond
22  to plaintiff's request.

23  Plaintiff did obtain a second opinion, submitting to a psychological evaluation by Dr. Charles
24  Silverstein on January 22 and February 18, 2000. Estrada Dec., Exh. J. Dr. Silverstein concurred
25  with Dr. Raffle that plaintiff should not to return to work. Id. at 8. Dr. Silverstein also noted that
26  plaintiff "consistently refused traditional psychiatric treatment," and that plaintiff had informed him
27  that he "was not interested in taking any medications because he felt that it would impair his ability
28  to compete professionally in golf . . . ." Id. at 3 & 8. Dr. Silverstein had also consulted Dr. Levy,

2

who had previously treated plaintiff. Id. at 4. Dr. Levy informed Dr. Silverstein that he "felt very strongly that [plaintiff] needed to be on anti-psychotic medication," and that plaintiff had refused such treatment in the past. Id. at 5. In terms of a possible return to work, Dr. Silverstein recommended a minimum of six months of treatment followed by an additional evaluation to determine whether plaintiff would be fit to return to work. Id. at 8.

In May 2000, Manager Virginia Glover informed plaintiff's attorney that plaintiff's return to work was "contingent upon sufficient improvement in his program of therapy and medication." Estrada Dec., Exh. K. Plaintiff did not take any prescription medication in 2000. Hearing Transcript at 110:25–111:22, 124:23–126:15, 127:23–25, 131:7–15. In August 2000, Imperial requested that plaintiff submit documentation that he was taking medication and attending therapy. Estrada Dec., Exh. L. Plaintiff did not respond to this letter. Hearing Transcript at 138:5–140:20.

In October 2000, plaintiff received a third psychological evaluation, this time from Dr. Thomas Marra. Estrada Dec., Exh. C. Dr. Marra's report stated that plaintiff had a prescription for Zyprexa but did not take it. Id. at 5. Dr. Marra found that plaintiff had a preoccupation with work-related sexual behavior, that plaintiff has problems with anxiety, and that plaintiff would be fit for duty if he did not have delusions. Id. at 5, 7 & 9. Dr. Marra set two requirements for plaintiff to be fit for duty: (1) weekly psychotherapy with a licensed therapist who has been provided with plaintiff's previous written psychological evaluations, and (2) evidence of compliance with psychotropic medication, including blood tests in light of plaintiff's prior refusal to take medication. Id. at 9.

To date, plaintiff has provided no documentation that he has taken any psychotropic medication. Although plaintiff obtained counseling in 2000 and 2001, plaintiff's therapist provided no verification that plaintiff had taken psychotropic medications while she was seeing him. Plaintiff has provided no documentation of counseling after January 2001. The Pleasanton Post Office issued Notices of Separation terminating plaintiff's employment on February 21, 2001 and March 22, 2001. Estrada Dec., Exhs. N & O.

II.     Procedural History

Plaintiff filed an EEO complaint with the Postal Service on August 16, 2004, alleging discrimination based on perceived mental disability. Estrada Dec., Exh. P. Plaintiff subsequently amended his complaint to include a charge of failure to accomodate. Id. Hearings were conducted before an Administrative Law Judge on December 3, 2003, December 4, 2003 and April 8, 2004. Plaintiff was represented by council during these proceedings.

Plaintiff filed his employment discrimination complaint in this court on May 19, 2006, asserting employment discrimination. Complt. ¶ 3. Plaintiff's complaint is a form complaint, and under the phrase "Defendant's conduct is discriminatory with respect to the following," the box marked "My race or color" is checked. Id. ¶ 5. However, the following paragraph states that "[t]he basic facts surrounding [plaintiff's] claim of discrimination are: Jimmy Castro is a qualified candidate for disability, therefore damages and return to work." Id. ¶ 6. The complaint further states that the EEOC issued a Notice-of-Right-to-Sue letter received by plaintiff on February 28, 2006, though no such letter is attached to the complaint. Id. ¶ 9.

Defendant now moves for summary judgment on plaintiff's race and disability discrimination claims.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

4

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

The moving party may "move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

DISCUSSION

At the outset, it should be noted that plaintiff has made almost no legitimate attempt to oppose this motion. Plaintiff's opposition, which was filed several weeks late, consists of a single paragraph:

> The 9th District Court of Northern California, San Francisco, must deny defendant summary judgment on grounds that since Dec 6, 1999 the Postal Service has illegally and unconstitutionally applied "Fitness for Duty" on Jimmy Castro a letter carrier. Other Federal Agencies has [sic] done away with "Fitness for Duty" because of its impracticalities and discrimination, by precedent and law it is therefore illegal this process, this atrocity, that has insued [sic] for 7 1/2 yrs and must end. The court must rule in favor of Plaintiff Jimmy Castro, stop this atrocity and discrimination and award full compensatory and punitive damages and more, applying rights for Jimmy Castro and his family that have been tortured and punished illegally for 7 1/2 yrs to date.

Plaintiff's opposition contains no citations to legal authority, no support for plaintiff's assertions, and utterly fails to respond to any of the specific points raised in defendant's motion. Plaintiff has also failed to present any evidence whatsoever in connection with his opposition.

The court now considers whether defendant has established entitlement to summary judgment on plaintiff's claims of discrimination based on race and disability.

I. <u>Discrimination Based on Race</u>

Defendant claims that plaintiff has failed to exhaust his administrative remedies regarding his race claim, because plaintiff's EEOC proceeding dealt with disability discrimination only. "To preserve her right to maintain a suit alleging employment discrimination against an agency of the United States, a claimant must exhaust her administrative remedies by filing a claim of discrimination with the allegedly offending agency in accordance with published procedures." <u>Leorna v. U.S. Dep't of State</u>, 105 F.3d 548, 550 (9th Cir. 1997). The procedures for submitting an employment discrimination complaint to the Postal Service are set forth at 29 C.F.R. section 1614.101 <u>et seq.</u> Plaintiff has made no showing that he has complied with these procedures, or that his race discrimination claim was at issue in the EEOC proceeding. In fact, plaintiff has made no showing of racial discrimination whatsoever. Accordingly, defendant is entitled to summary judgment on plaintiff's claim of discrimination based on race.

II. <u>Discrimination Based on Disability</u>

To establish a prima facie case of employment discrimination based on disability, plaintiff must establish: (1) that he is "a disabled person within the meaning of the ADA"; (2) that he is "qualified, with or without reasonable accommodation, that is, able to perform the essential functions of the job"; and (3) that he was terminated because of his disability. <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 271 (9th Cir. 1996). Plaintiff's claim clearly fails on the second prong. The three doctors who have evaluated plaintiff unanimously agree that plaintiff is unable to work unless he takes psychotropic medication to control his paranoid and delusional behavior. The record confirms that plaintiff's mental illness has caused severe problems in interacting with other employees. Because the record demonstrates that plaintiff consistently refuses to take his medication, he is unable to perform the essential functions of a postal worker.

Plaintiff also fails to meet the third prong. Defendant has articulated a non-discriminatory

basis for terminating plaintiff. It is plaintiff's failure to take his medication, not his disability per se, that caused the Postal Service to terminate plaintiff's employment. The record clearly shows that the Postal Service was willing to continue to employ plaintiff, regardless of his mental illness, so long as he controlled his illness with medication and therapy. These conditions were reasonable and permissible under federal anti-discrimination law.

The Seventh Circuit's analysis in Siefken v. Vill. of Arlington Heights, 65 F.3d 664 (7th Cir. 1995) is instructive. There, a probation officer suffered a diabetic reaction while on duty, resulting in "disorientation and memory loss" and causing the officer to "erratically [drive] his squad car at high speed through residential areas some forty miles outside his jurisdiction." Id. at 665. The Seventh Circuit, upholding the dismissal of the officer's discrimination claim, held that the officer had been terminated not because of his disability, but because of "his failure to alertly and accurately keep himself functional and monitor his disease." Id. at 666 (internal quotations omitted). Likewise, Mr. Castro has been given every opportunity to keep his job by controlling his mental illness, and has consistently failed to do so. His resulting termination under these circumstances does not constitute unlawful discrimination.

Accordingly, defendant is entitled to summary judgment on plaintiff's claim for discrimination based on disability.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated:   June 25, 2007                                         _____
                                                                Marilyn Hall Patel
                                                                United States District Court Judge
                                                                Northern District of California

7